**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SOUTHEAST ALASKA CONSERVATION
COUNCIL; SKAGWAY MARINE ACCESS
COMMISSION; LYNN CANAL
CONSERVATION, INC.; ALASKA
PUBLIC INTEREST RESEARCH GROUP;
SIERRA CLUB; NATURAL RESOURCES
DEFENSE COUNCIL,
                    *Plaintiffs-Appellees,*

v.

FEDERAL HIGHWAY ADMINISTRATION;
UNITED STATES DEPARTMENT OF
TRANSPORTATION; RAY LAHOOD, in
his official capacity as Secretary
of Transportation; UNITED STATES
FOREST SERVICE; DAVID C. MILLER,
in his official capacity as Division
Administrator for the Federal
Highway Administration; UNITED
STATES DEPARTMENT OF
AGRICULTURE; MARK REY, in his
official capacity as Under
Secretary of Agriculture; DENNIS
R. BSCHOR, in his official capacity
as Alaska Regional Forester,
                    *Defendants,*

and

STATE OF ALASKA,
    *Defendant-intervenor-Appellant.*

No. 09-35551

D.C. No.
1:06-cv-00009-JWS

OPINION

Appeal from the United States District Court
for the District of Alaska
John W. Sedwick, District Judge, Presiding

Argued and Submitted
July 26, 2010—Anchorage, Alaska

Filed May 4, 2011

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Schroeder;
Dissent by Judge O'Scannlain

## COUNSEL

Katherine S. Glover, Juneau, Alaska, for plaintiffs-appellees Southeast Alaska Conservation Council, et al.

Sean Lynch, Juneau, Alaska, for defendant-intervenor-appellant State of Alaska.

**OPINION**

SCHROEDER, Circuit Judge:

The issue in this environmental case is whether the district court properly ordered the State of Alaska to consider improving existing ferry service between Juneau and the communities of Haines and Skagway before proceeding with expensive construction of a new ferry terminal and highway through a national forest. We hold the district court was correct under settled environmental law.

Intervenor State of Alaska appeals the district court's judgment in favor of Southeast Alaska Conservation Council and five other groups (collectively, "SEACC") in their suit against the Federal Highway Administration ("FHWA"), the Department of Transportation, the Forest Service, the Department of Agriculture, and individual federal officials. Alaska argues the district court erred in holding that the Environmental Impact Statement ("EIS") issued by the FHWA for the Juneau Access Improvements Project violated the National Environmental Policy Act ("NEPA") by failing to consider as a project alternative any plan that would improve existing ferry services in Lynn Canal, Alaska, without the construction of new roads, ferries, or terminals. The district court vacated the FHWA's Record of Decision ("ROD"), which approved Alaska's preferred alternative for the project, and enjoined all construction and activities that depended on the issuance of a valid EIS, until one was prepared. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.   FACTS & PROCEDURAL HISTORY

In the early 1990s, the Alaska Department of Transportation and Public Facilities ("ADOT") initiated the Juneau Access Improvements Project ("Project") to improve surface access between Juneau and the communities of Haines and

Skagway in the Lynn Canal corridor of Southeast Alaska. Access to Juneau is possible by air and water.

The available public surface transportation to and from Juneau is the Alaska Marine Highway System ("AMHS"), a state-owned ferry system operated by ADOT that provides transportation to many of Alaska's southeast coastal communities. AMHS service from Juneau connects to the continental highway system in Prince Rupert, British Columbia, and Bellingham, Washington, to the south, and in Haines and Skagway to the north. The most commonly used access route to the continental highway system is the northbound ferry.

Because the Project would involve federal lands, federal funds, and environmental impacts, ADOT needed to obtain approvals and permits from several federal agencies, including the FHWA. In June 1997, ADOT and the FHWA issued a draft EIS for the Project, as required by NEPA, 42 U.S.C. § 4332. *See* AR 2693-4409. Over the next two years, ADOT analyzed comments submitted regarding the draft EIS and conducted further studies. In January 2000, Governor Tony Knowles announced that ADOT's preferred alternative for the Project was a plan in the draft EIS calling for the construction of a highway along the eastern side of Lynn Canal to a new ferry terminal to be built near the Katzehin River Delta, but stated that the alternative would not be actively pursued during his administration because of its high cost. He directed ADOT to discontinue most work on the EIS.

In 2002, Governor Frank Murkowski ordered the completion of the EIS. Because more than three years had passed since the release of the draft EIS, ADOT, in December 2002, reevaluated the adequacy of the earlier study. *See* 23 C.F.R. § 771.129(a). ADOT determined, and the FHWA concurred, that there were sufficient changes in project alternatives and potential environmental impacts to warrant preparation of a supplemental draft EIS. ADOT and the FHWA released the supplemental draft in January 2005, and allowed public com-

ment until March 21, 2005. Among those who submitted comments was Plaintiff-Appellee SEACC.

The supplemental draft EIS analyzed ten alternatives for the Project. All but the first involved substantial construction expenditures. The alternatives included: No Action Alternative — Continuation of existing mainline AMHS service and fast ferry service in Lynn Canal, with the previously scheduled addition of a ferry shuttle service between Haines and Skagway; Alternatives 2, 2A, 2B, and 2C — Various plans that would include construction of a highway along the eastern coast of Lynn Canal (the "East Lynn Canal Highway") that either stretched all the way to Skagway or stopped at some point short of Skagway where a new ferry terminal would be constructed to provide shuttle service to and from Skagway and Haines; Alternative 3 — Building two new ferry terminals slightly north of Juneau—one on the east and one on the west side of Lynn Canal—to provide ferry service between Juneau and a 39-mile highway to Haines that would be constructed on the western coast of the canal (the "West Lynn Canal Highway"), with ferry service also offered between Haines and Skagway; and Alternatives 4A, 4B, 4C, and 4D — Four marine alternatives that would consist of constructing new ferries to operate in addition to continued mainline service in Lynn Canal. The supplemental draft EIS identified Alternative 2 as the preferred alternative for the Project. Under Alternative 2, the East Lynn Canal Highway would extend from Juneau to Skagway, and a new ferry terminal would be constructed on the eastern shore of Lynn Canal near the Katzehin River Delta to provide shuttle service to Haines.

In its comment letter to the FHWA, SEACC asserted that the supplemental draft EIS violated NEPA. Among other contentions, SEACC argued that the analysis of Project alternatives in the supplemental draft EIS was inadequate because it failed to consider practicable ways of improving ferry service without expenditure of significant capital funds. Citing to ref-

erendum votes and survey results, SEACC asserted that a majority of the community in the Lynn Canal corridor preferred improving existing AMHS ferry services over building a network of new roads. Despite this public support, however, the supplemental draft EIS failed to analyze as a Project alternative any plan that would make changes to improve existing ferry services without expending significant capital funds for new roads, terminals, or ferries. SEACC attached as an exhibit to its comment letter a May 2002 study by a consulting firm that suggested changes in AHMS's management structure, operations, and financial planning that would reduce costs to the State while improving the existing ferry service. SEACC also suggested that scheduling changes, including revisions to current ferry routes, could be made to the existing services that would provide greater flexibility and improved opportunity for travel at a reduced user cost.

In August 2005, ADOT issued a press release announcing that it had changed its preferred alternative for the Project from Alternative 2 to Alternative 2B. Alternative 2B would terminate the new East Lynn Canal Highway at a point north of the Katzehin River Delta, where a new terminal would be built to provide shuttle ferry service to Skagway and Haines. That service, in turn, would be supplemented by the new shuttle between Skagway and Haines contemplated in the No Action Alternative. The change in preference from Alternative 2 to Alternative 2B was necessitated by the fact that a portion of the East Lynn Canal Highway, as envisioned by Alternative 2, would run through lands subject to § 4(f) of the Department of Transportation Act, 49 U.S.C. § 303. Section 4(f) prohibits the Secretary of Transportation from authorizing the use of federal funds to finance the construction of highways through a public park, recreation area, wildlife and waterfowl refuge, or historic site, unless there is "no prudent and feasible alternative to using that land." 49 U.S.C. § 303(c). Alternative 2B did not run through lands subject to § 4(f).

ADOT and the FHWA issued the final EIS in January 2006. The final EIS dropped three Project alternatives considered in the supplemental draft EIS (Alternatives 2, 2A, and 2C) from consideration, because the FHWA had determined that they would involve lands protected under § 4(f) of the Department of Transportation Act. It retained the remaining seven Project alternatives included in the supplemental draft EIS (Alternatives 1, 2B, 3, 4A, 4B, 4C, and 4D), and provided an analysis of each. The final EIS identified Alternative 2B, involving construction of a new highway and ferry terminal, as the preferred alternative. In analyzing the environmental consequences of each of the remaining alternatives, the final EIS identified several adverse environmental impacts that might result from the selection and completion of the preferred alternative. These included: the loss of 70 acres of wetlands and 428 acres of terrestrial habitat, including 68 acres of old-growth forest in reserves established by the United States Forest Service ("USFS"), the possibility of up to a 26% reduction in the brown bear habitat capability of the areas impacted by the construction of the East Lynn Canal Highway, and the possible relocation of bald eagle nests, since the East Lynn Canal Highway would be located within half a mile of 92 bald eagle nests, and within 330 feet of 49 of those nests. Responses to comments received during the comment period for the supplemental draft EIS were included in an appendix to the final EIS. Addressing SEACC's concern that the EIS's analysis of ferry alternatives did not consider practicable ways of improving ferry services without expending significant public funds, ADOT and the FHWA said only that it could not increase service in the Lynn Canal without reducing service elsewhere:

> [T]he No Action Alternative is a projection of future Lynn Canal service based on existing AMHS assets and the most recent Southeast Alaska Transportation Plan. AMHS has experimented with different levels and types of service in Lynn Canal and would likely continue to do so in the future. While there are many

opinions on ways to improve ferry service in Lynn Canal, there is no way AMHS can meet the purpose and need for the project solely by making changes to the current operational model. Absent construction of new vessels, an increase in capacity would require reduction in service outside of Lynn Canal.

ADOT began distributing the final EIS to the public and made the document available electronically on its website in late January 2006. The Environmental Protection Agency published notice of the availability of the final EIS in the Federal Register on February 10, 2006. *See* Notice of Availability of Environmental Impacts Statements, 71 Fed. Reg. 7040 (Feb. 10, 2006). ADOT encouraged interested parties to submit their comments on the final EIS by March 13, 2006. SEACC, on March 13, 2006, submitted a comment letter addressing the organization's concerns with the final EIS. SEACC faulted the final EIS as unreasonable for not considering an alternative to the Project that would increase capacity and flexibility without requiring substantial initial capital expenditures. SEACC said:

> Rather than building new ferries, roads, or terminals, ADOT could make more efficient use of the assets it currently owns. Through more efficient management and scheduling, capacity can be increased dramatically, costs to the state and user can be lowered, and flexibility and reliability can be increased. All of this can be accomplished without the enormous initial expense of money, tremendous dangers, and ecological and cultural damage that would accompany ADOT's Preferred Alternative.

SEACC argued that the failure to consider such an alternative in the final EIS violated NEPA.

To remedy this deficiency, SEACC proposed a "Better Ferry Service Alternative" that included specific changes to

improve the current ferry system in Lynn Canal, without resorting to the construction of new ferries or terminals. The suggested changes included modifications to the current ferry schedule, reassigning mainline vessels, increasing the staff at the ferry terminals, increasing the reservation staff, upgrading the reservation website, producing and maintaining a reliable schedule two years in advance, increasing marketing, reducing fares, and improvements to the management structure. SEACC explained that other configurations of this plan were possible, including the reassignment of vessels from other communities during periods of peak demand in Lynn Canal. SEACC acknowledged that such changes would lower service to the communities from which the vessels were reassigned, but stated such reassignments would be temporary and predictable, meaning schedules could be developed far in advance to mitigate inconvenience.

On April 3, 2006, the FHWA issued an ROD approving Alternative 2B as the proposed action for the Project. In an appendix to the ROD, the FHWA responded to the substantive comments it had received on the final EIS. Addressing SEACC's concern that the EIS should have included an analysis of a Project alternative that improved ferry services using existing assets, the FHWA said:

> The Final EIS explains that a TSM alternative would require taking vessels from other parts of the system. Reducing service in other parts of the system, or using vessels made available by vessel replacement in other system parts, would merely shift costs, avoiding capital costs in Lynn Canal while increasing operation cost.

On May 3, 2006, ADOT sent a letter to the FHWA requesting a right of way for the Project from the USFS. The FHWA forwarded the request to the USFS, and on May 22, 2006, the USFS consented to the FHWA's appropriation of the portion of the right of way that is on lands within the Tongass

National Forest, for the purpose of constructing the East Lynn Canal Highway.

In August 2006, SEACC commenced this action under the Administrative Procedure Act ("APA") seeking review of the Project on the grounds that it violated NEPA, the National Forest Management Act, the Bald Eagle Protection Act, and the Endangered Species Act. SEACC's complaint sought both declaratory and injunctive relief. It named federal agencies and officials as defendants, but the State of Alaska sought and received permission to intervene as a defendant in the action.

SEACC moved for summary judgment. SEACC argued that the FHWA violated NEPA when it refused to consider in the EIS a reasonable alternative that called for improved ferry services using existing resources, and that the FHWA's justifications for not considering this alternative were arbitrary. The district court granted SEACC's motion, holding that NEPA had not yet been complied with. The court ruled that the EIS failed to satisfy NEPA's requirements "to consider or properly reject proposed alternatives." *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 979 (9th Cir. 2006). Thus, the court vacated the ROD, remanded the USFS's decision granting a right of way to the FHWA, and enjoined all construction on the Project and any activities dependent on the issuance of a valid EIS. The court entered its final judgment in this matter on April 6, 2009, and the State timely appealed on June 4, 2009. *See* FRAP 4(a)(1)(B). The federal defendants' appeal was voluntarily dismissed September 8, 2009. They have filed no briefs in this appeal.

## II. DISCUSSION

NEPA requires federal agencies to prepare an environmental impact statement ("EIS") for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Challenges to an agency's compliance with NEPA are reviewed under standards set forth in the

Administrative Procedure Act ("APA"). *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1152 (9th Cir. 2008); *Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 865 (9th Cir. 2004). Under the APA, the agency's decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In making the determination concerning whether an agency decision was " 'arbitrary or capricious,' the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

**[1]** Under NEPA's applicable regulations, a federal agency's EIS must "[r]igorously explore and objectively evaluate all reasonable alternatives [to a proposed action], and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a). We have repeatedly recognized that if the agency fails to consider a viable or reasonable alternative, the EIS is inadequate. *See e.g. Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1038 (9th Cir. 2008); *'Ilio 'ulaokalani Coalition v. Rumsfeld*, 464 F.3d 1083, 1095 (9th Cir. 2006).

**[2]** In *N. Alaska Envtl. Ctr.*, a group of environmental plaintiffs challenged an EIS issued by the Bureau of Land Management ("BLM") to open land in northern Alaska to oil and gas leasing under NEPA, arguing, *inter alia*, that the EIS failed to consider reasonable alternatives. 457 F.3d at 973. As in the present case, an environmental group proposed an alternative in a comment to the draft EIS. *Id.* at 978. The so-called Audubon Alternative recommended that the BLM make a lower percentage of the land available for leasing. *Id.* In holding in that case that the EIS "adequately examined a range of viable alternatives," we noted that the EIS explained that the

proposed alternative was inconsistent with the project and statutory mandates, and that the BLM specifically incorporated several of the Audubon Alternative's recommendations into the Preferred Alternative. *Id.* at 978-79. There was no such explanation or modification in this case.

Accordingly, in this case, the district court held the Agency did not consider a reasonable alternative as it was required to do. *See Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*, 67 F.3d 723, 729 (9th Cir. 1995). In granting summary judgment to the plaintiffs, the district court held that improving ferry services using existing resources was a reasonable alternative for improving transportation within Lynn Canal, and that the FHWA therefore violated NEPA when it failed to consider this alternative in the final EIS. *See also Citizens for a Better Henderson v. Hodel*, 768 F.2d 1051, 1057 (9th Cir. 1985) ("The existence of a viable but unexamined alternative renders an environmental impact statement inadequate"). As we said in *Bob Marshall Alliance v. Hodel*, 852 F.2d 1223 (9th Cir. 1988), "[i]nformed and meaningful consideration of alternatives — including the no action alternative — is thus an integral part of the statutory scheme." *Id.* at 1228.

The district court agreed with SEACC that the FHWA's justifications for not considering SEACC's proposed alternative — that it would potentially reduce services elsewhere and increase costs — were arbitrary, because all of the alternatives that were considered in the EIS, particularly Alternative 2B, posed the same risks. Any of the "build" alternatives considered in detail in the EIS, including Alaska's preferred alternative to build a new road and terminal, would increase costs for the state and could have the ripple effect of reducing service elsewhere. The EIS estimated that each of the build alternatives would have initial capital costs of between $103 million and $268 million. Although Alaska anticipated that the lion's share of these costs would be reimbursed by the federal government, the EIS still estimated that the net cost to the state

over the next thirty-five years would range between $70 million and $98 million for the build alternatives. This cost was greater than the estimated $61 million the state would have to pay over the same thirty-five year period under the only non-construction alternative considered in the EIS — the No Action Alternative.

Additionally, the EIS's estimates of the amount of federal funding ADOT would receive for the build alternatives may have been overly optimistic. The EIS estimated that the net state cost for Alaska's preferred alternative would be $88 million, but the ROD increased that estimate by $34 million after the FHWA determined that less federal funding would be available than ADOT had anticipated when it helped prepare the EIS. As the supplemental draft EIS cautioned, reductions in the anticipated amount of federal funding for the build alternatives will force ADOT to delay or eliminate other transportation projects it has planned. Thus, it is likely that Alaska's preferred alternative, if pursued, would have the ripple effect of reducing services elsewhere as money is shifted from other transportation projects to cover the costs of building the new road and terminal in the Lynn Canal corridor.

The district court also rejected the defendants' argument that they had considered SEACC's proposal in the final EIS's No Action Alternative. The district court pointed out that both the EIS and the ROD expressly acknowledged that the No Action Alternative would provide reduced, not improved, ferry services.

[3] The final EIS's explanation of the FHWA's consideration of a No Action Alternative is cursory. Three brief paragraphs first describe the "No Action Alternative" as an updated 1997 plan for ferry usage, then assert that using more ferries would reduce service elsewhere (without explaining the comparative needs for such services) and finally note that under the No Action Alternative AMHS could add ferries in

the future but would not build anything. The entire explanation, after the description of current service, is as follows:

The No Action Alternative is an updated version of the 1997 Draft EIS Alternative 1, titled No Build/Transportation System Management. Alternative 1 originally used the term No Build rather than No Action to help clarify that the AMHS has and would continue to implement new actions in the Lynn Canal corridor. An example of an expected AMHS addition to Lynn Canal is the use of the *M/V Aurora* as a shuttle ferry between Haines and Skagway.

Transportation System Management (TSM) refers to activities that maximize the efficiency of an existing system with little or no new construction. It is generally applicable to transportation systems in urban areas and typically involves options such as fringe parking, ride sharing, designating high-occupancy vehicle (HOV) lanes, and traffic signal timing optimization. *Reassigning vessels to Lynn Canal could be reviewed as a form of TSM, but unlike more typical TSM measures, this would be at the expense of service elsewhere. For this reason, there is no TSM alternative in the Supplemental Draft EIS range of alternatives* and the term TSM is not included in the Alternative 1 title.

New actions that AMHS may implement in the Lynn Canal corridor include deploying different vessels (including new ones added to the system as a whole) and changing schedules, but do not include implementing a build alternative specific to the Juneau Access Improvements Project.

(emphasis added). This explanation does not represent the "substantial treatment" required by NEPA's implementing

regulations to any non-construction alternatives. *See* 40 C.F.R. § 1502.14(b) (discussion in reasonable alternatives section of EIS shall "[d]evote substantial treatment to each alternative considered in detail including the proposed action so that reviewers may evaluate their comparative merits").

[4] Alaska now asserts that "optimization" measures, such as "maximizing the amount of time the systems are in operation each day, . . . scheduling fixed daily service . . . and, calculating vessel use and speeds based on operating history and environmental conditions in Southeast Alaska," were considered during preparation of the EIS. The EIS, however, itself does not discuss what these measures were. Rather, the FHWA acknowledged in a response to comments on the EIS that "[t]he only improvement (or additional service beyond current service) included in the No Action Alternative is the addition of shuttle service between Haines and Skagway." The EIS thus falls below NEPA's standards because it fails to provide policymakers and the public with sufficient information to "make an informed comparison of the alternatives." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1439 (9th Cir. 1988), *amended by* 867 F.2d 1244 (9th Cir. 1989). While the dissent asserts that the SEACC proposal is "remote and speculative," dissent at 5911, given the dearth of reasoned explanation in the EIS for its rejection, the record does not permit us to so conclude as a matter of law.

[5] At oral argument, counsel for Alaska suggested that Chapter 1 of the EIS supplied the necessary analysis supporting the FHWA's decision not to give detailed consideration to SEACC's proposal by demonstrating that all of the AMHS ferries are currently running at full capacity. Chapter 1 of the EIS, however, merely gives a historical overview of the development of the ferry system in Lynn Canal, generally describing what vessels have operated in Lynn Canal in the past and what vessels currently operate there now. It contains no analysis of ferry service to other areas, or of how the assignment of additional vessels to Lynn Canal would affect

service elsewhere. Therefore, it does not provide any reasoned support for the FHWA's position that reassigning vessels was not a reasonable alternative that required detailed consideration in the EIS.

[6] The district court therefore properly concluded that it was arbitrary for the FHWA to refuse to consider reassigning vessels as a project alternative on the basis that it would increase costs and reduce services elsewhere when the chosen project alternative could have been rejected for the same reason. By failing to examine a viable and reasonable alternative to the proposed project, and by not providing an adequate justification for its omission, the EIS issued by the FHWA violated NEPA. *See* 40 C.F.R. § 1502.14(a); *Friends of Yosemite Valley*, 520 F.3d at 1038; *'Ilio 'ulaokalani*, 464 F.3d at 1095.

**AFFIRMED.**

O'SCANNLAIN, Circuit Judge, dissenting:

The majority holds that the final environmental impact statement prepared by the State of Alaska and the Federal Highway Administration violates the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, by failing to consider certain alternatives to the State's proposed plan to improve surface transportation to Juneau, Alaska. I respectfully dissent.

I

Under the National Environmental Policy Act ("NEPA"), a federal agency proposing a major action "significantly affecting the quality of the human environment" must prepare an environmental impact statement ("EIS") that includes a "detailed" account of the "alternatives to the proposed action." 42 U.S.C. § 4332(2)(C)(iii). The EIS must "[r]igorously explore

and objectively evaluate all reasonable alternatives, and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a).

"NEPA itself does not mandate particular results." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). Rather, it "simply prescribes the necessary process" by which agencies must take a "hard look" at the environmental consequences of their proposed actions. *Id.* (internal quotation marks omitted). Accordingly, the question in this case is not whether the final EIS prefers the *wrong* alternative, but rather whether it considers a *reasonable range* of alternatives. As we explained in *Headwaters, Inc. v. BLM*, 914 F.2d 1174 (9th Cir. 1990):

> Section 4332 does not require the consideration of alternatives whose effect cannot be reasonably ascertained, and whose implementation is deemed remote and speculative. Nor must an agency consider alternatives which are infeasible, ineffective, or inconsistent with the basic policy objectives for the management of the area. Finally, NEPA does not require a separate analysis of alternatives which are not significantly distinguishable from alternatives actually considered, or which have substantially similar consequences. Thus, an agency's consideration of alternatives is sufficient if it considers an appropriate range of alternatives, even if it does not consider every available alternative.

*Id.* at 1180 (internal quotation marks and citations omitted).

II

The majority holds that the final EIS fails to consider certain alternatives for improving surface transportation to Juneau. According to the majority, the final EIS does not con-

sider the possibility of improving ferry service by maximizing the use of existing infrastructure. Maj. Op. at 5897-98. In my view, however, the final EIS includes just such an alternative: the No Action Alternative.

As the final EIS explains, the No Action Alternative is based on the absence of capital improvements to ferry service in Lynn Canal. Thus, unlike the other alternatives considered in the final EIS, the No Action Alternative includes no new highways, terminals, or ferries. It is not the case, however, that the Alternative contemplates no new improvements at all. The final EIS makes clear that the No Action Alternative presumes the continued implementation of non-capital improvements, including measures designed to make the most of existing infrastructure. Indeed, the final EIS expressly considers "deploying different vessels," "changing schedules," and "experiment[ing] with different levels and types of service in Lynn Canal" as part of the No Action Alternative.

The majority asserts that the final EIS "expressly acknowledged that the No Action Alternative would provide reduced, not improved, ferry services." Maj. Op. at 5905-06. The suggestion is that the Alternative does not seriously contemplate improvements in ferry service if it anticipates that such a reduction would occur. The acknowledgment to which the majority refers, however, must be read in context. The relevant portion of the final EIS states: "The No Action Alternative is a reduction below the current level of service *due to reduced mainliner frequency in Lynn Canal*. Mainliner frequency would be reduced because of *projected reduction in the number of mainliners* operating in the [Alaska Marine Highway System or AMHS]." (emphases added). In short, the reduction in service would be caused by a lack of *capital* improvements, *i.e.*, of new ferries servicing the canal. That the No Action Alternative presumes such a reduction says nothing about whether the Alternative contemplates the possibility of *non-capital* improvements. Just because there would be a reduction in service from the lack of new ferries does not

mean that measures to maximize the efficiency of the existing infrastructure have been ignored.

The majority also faults the final EIS for not specifically considering the suggestion by the Southeast Alaska Conservation Council ("SEACC") to improve ferry transportation by reassigning two mainline vessels to service in Lynn Canal. NEPA, however, "does not require the consideration of alternatives . . . whose implementation is deemed remote and speculative." *Headwaters*, 914 F.2d at 1180. Here, implementation of SEACC's suggestion is both. As explained in the final EIS, the No Action Alternative "is based on the *most likely* AMHS operations in the absence of any capital improvements specific to Lynn Canal," as reflected in the 2004 Southeast Alaska Transportation Plan ("SATP") developed by the Alaska Department of Transportation and Public Facilities (emphasis added). SEACC's proposal to reassign two mainline vessels to round-trip service in the canal is inconsistent with the SATP. Given that the SATP represents "a comprehensive, intermodal, long-range transportation plan" for the region, Alaska Stat. § 44.42.050(a), any possibility of implementing SEACC's proposal is remote and speculative.

Moreover, NEPA does not require the consideration of "alternatives which are infeasible, ineffective, or inconsistent with the basic policy objectives for the management of the area." *Headwaters*, 914 F.2d at 1180. As the final EIS notes, reassigning two mainline vessels to round-trip service in the Lynn Canal would come "at the expense of service elsewhere." Although it is true, as the majority points out, that the final EIS considers other alternatives that "would increase costs for the state and could have the ripple effect of reducing service elsewhere," Maj. Op. at 5904, the costs associated with SEACC's proposal are qualitatively different. By diverting vessels from one route to another in contravention of the SATP, the State would be directly depriving another area of committed resources. It was not arbitrary or capricious for the

State to conclude that what amounts to robbing Peter to pay Paul would be "infeasible, ineffective, or inconsistent with the basic policy objectives of the area."

For these reasons, I believe the State reasonably concluded that SEACC's proposal to reassign mainline vessels did not require separate analysis. Because the final EIS considers a reasonable range of alternatives, it meets the requirements of NEPA. Accordingly, I would reverse the judgment of the district court.