RAWLINSON, Circuit Judge,
concurring in part and dissenting in part:
I concur in the bulk of the majority opinion. I disagree only with the rationale and conclusion that the Bureau of Reclamation’s adoption and implementation of the Biological Opinion triggered its obligation to comply with the National Environmental Policy Act (NEPA) by preparing an Environmental Impact Statement that is generally required under the Endangered Species Act.
It is important to keep in mind that the Bureau of Reclamation adopted and implemented the detailed Biological Opinion in this case to alleviate harm to threatened and endangered species and/or their critical habitat caused by operation of the federally operated Central Valley Water Project and the state operated State Water Project.
As an initial matter, I do not agree that the adoption of “reasonable and prudent alternatives” to alleviate harm to threatened and endangered species and/or their critical habitat from ongoing operations of the water projects constituted a “major Federal action” triggering the requirement of an Environmental Impact Statement. See 42 U.S.C. § 4332(2)(C) (requiring the preparation of an Environmental Impact Statement for “major Federal actions”). I am persuaded toward that view by our rationale in two cases with facts similar to those in this case. The first is Upper Snake River Chapter of Trout Unlimited v. Hodel, 921 F.2d 232 (9th Cir.1990). In Upper Snake River, the panel posed the following question: “Did the District Court err in concluding that the National Environmental Policy Act (“NEPA”) did not require the Bureau of Reclamation (“Bureau”) to prepare environmental impact statements (“EIS”) before periodically adjusting the flow of water from the Palisades Dam?” The panel responded: ‘We are clear that the answer is ‘No.’ ” Id. at 233.
To apply the reasoning of Upper Snake River, we need only change the name of the dam in the question posed. To me, the answer is equally clear. The Bureau of Reclamation was not required to prepare an Environmental Impact Statement when it adopted the reasonable and prudent alternatives from the Biological Opinion to set flow limits for water controlled by the Central Valley water project.
Much like the water supply in the Central Valley, the amount of water in the Snake River “fluctuates considerably from year to year, depending on the amount of snow pack in the mountains....” Id. Water from the river is captured in reservoirs and the water flow is controlled and regulated by dams. See id. The Plaintiffs challenged the Bureau of Reclamation’s decision to reduce the flow rate below 1,000 cubic feet per second in times of less precipitation. See id. at 234. In rejecting the contention that NEPA was applicable, the district court held:
In the case of the Palisades Dam, the fluctuating flows are routine actions which are contingent upon Mother Nature for snowpack, runoff, precipitation and carryover. As part of its routine and ongoing operations, the Bureau of Reclamation fluctuates the flows depending upon weather conditions past and future. Overall, the Court views the fluctuation of flows below Palisades as “ongoing operations,” which do not have to comply with ... NEPA.
Id. (alterations omitted) (emphasis added).
Once again and without equivocation, the panel concluded: “[W]e are clear that *660 the district court’s conclusion was correct.” Id. The panel explicitly determined that water flow fluctuation was not a “major Federal action” under NEPA. Id. As with Central Valley operations, the Palisades project was completed well before the effective date of NEPA. See id. According to the panel, post-construction fluctuation of water flow constituted routine operation of the dam rather than a major action triggering NEPA requirements. See id. at 234-35.
The panel relied heavily on the reasoning in Trinity County v. Andrus, 438 F.Supp. 1368 (E.D.Cal.1977). In Trinity County, Plaintiffs sought an injunction prohibiting the Bureau of Reclamation from lowering the water level in the Central Valley water project during a drought year. See id. at 1371. The district court framed the issue as “not whether the actions are of sufficient magnitude to require the preparation of an [Environmental Impact Statement], but rather whether NEPA was intended to apply at all to the continuing operations of completed facilities .... ” Id. at 1388 (citation omitted).
The district court distinguished water flow determinations from cases “when a project takes place in incremental stages of major proportions or when a revision or expansion of the original facilities is contemplated ...” Id. (citations omitted). The district court in Trinity County also noted that the Bureau of Reclamation had not enlarged its diversion capacity, or revised its procedures or standards for release of water or draws from reservoirs. See id. at 1388-89. Under these circumstances, the requirements of NEPA simply were not triggered. See id. Taking its cue from Trinity County, the panel in Upper Snake River reasoned that:
The Federal defendants in this case had been operating the dam for upwards of ten years before the effective date of [NEPA]. During that period, they have from time to time and depending on the river’s flow level, adjusted up or down the volume of water released from the Dam. What they did in prior years and what they were doing during the period under consideration were no more than the routine managerial actions regularly carried on from the outset without change. They are simply operating the facility in the manner intended. In short, they are doing nothing new, nor more extensive, nor other than that contemplated when the project was first operational....
921 F.2d at 235.
Because the Bureau of Reclamation similarly continued to do nothing more than “monitor[ ] and control ... the flow rate to ensure that the most practicable conservation of water is achieved,” id. at 235-36, the panel concluded that no Environmental Impact Statement was required. See id. at 236; see also Grand Canyon Trust v. United States Bureau of Reclamation, 691 F.3d 1008, 1021-22 (9th Cir.2012), as amended (citing Upper Snake River and similarly concluding that execution of annual operating plans regulating fluctuations in water flow was “not a major federal action requiring compliance with NEPA”); Burbank Anti-Noise Group v. Goldschmidt, 623 F.2d 115, 116 (9th Cir.1980) (“An EIS need not discuss the environmental effects of mere continued operation of a facility-”) (citation omitted).
The second case with similar facts is Douglas County v. Babbitt, 48 F.3d 1495 (9th Cir.1995). In Douglas County, the panel considered whether the designation of critical habitat under the Endangered Species Act required compliance with NEPA. See id. at 1497. In the process of deciding that issue, the panel focused on the difference between the requirements and purpose of NEPA and the require *661 ments and purpose of the Endangered Species Act. “The [Endangered Species Act] furthers the goals of NEPA without demanding an [Environmental Impact Statement] ...” Id. at 1506 (emphasis added). Indeed, “[t]he [Endangered Species Act] is a substantive statute whose goal is to prevent extinction ... By designating critical habitats ... the Secretary is working to preserve the environment ...” Id. at 1506 (citations and internal quotation marks omitted). The panel concluded that the designation of critical habitat “further[ed] the purpose of NEPA [and] [requiring the [agency] to file an EIS would only hinder its efforts at attaining the goal of improving the environment.” Id. (citation and internal quotation marks omitted).
In contrast to the substantive nature of the Endangered Species Act, “NEPA is essentially a procedural statute designed to insure that environmental issues are given proper consideration in the decision-making process.... ” Trustees for Alaska v. Hodel, 806 F.2d 1378, 1382 (9th Cir.1986) (citation omitted). “NEPA does not mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their action.” Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1115-16 (9th Cir.2002), overruled in part on other grounds, Wilderness Soc’y v. United States Forest Serv., 630 F.3d 1173, 1178-79 (9th Cir.2011) (citation and internal quotation marks omitted). “The purpose of NEPA is to provide a mechanism to enhance or improve the environment and prevent further irreparable damage.” Drakes Bay Oyster Co. v. Jewell, No. 13-15227, 747 F.3d 1073, 1090, 2014 WL 114699 at *12 (9th Cir. Jan. 14, 2014), as amended (citation and internal quotation marks omitted). An Environmental Impact Statement implements the NEPA regulations by “rigorously exploring] and objectively evaluating] all reasonable alternatives to a proposed action ...” Southeast Alaska Conserv. Council v. Federal Highway Admin., 649 F.3d 1050, 1056 (9th Cir.2011) (quoting 40 C.F.R. § 1502.14(a)). An agency does not violate NEPA by declining to re-examine alternatives that have previously been evaluated. See, e.g., HonoluluTraffic.com v. Federal Transit Admin., No. 13-15277, 742 F.3d 1222, 1231, 2014 WL 607320 at *6 (9th Cir. February 18, 2014).
It is undisputed that the Biological Opinion “rigorously explore[d] and objectively evaluate[d] all reasonable alternatives” over hundreds of pages. 40 C.F.R. § 1502.14(a). Indeed, the express purpose of the Biological Opinion was to develop reasonable and prudent alternatives to the existing activities that were harmful to the environment. See 50 C.F.R. § 402.14 (setting forth formal consultation procedures to ensure that the impact of proposed actions on listed species and their critical habitat are fully considered); see also Save the Yaak Committee v. Block, 840 F.2d 714, 718 (9th Cir.1988), as amended (noting the NEPA requirement that an environmental assessment “include brief discussions of the environmental impacts of the proposed action and alternatives ”) (emphasis added).
As with the habitat listing in Douglas County, the Biological Opinion in this case served the same function as an Environmental Impact Statement. See 48 F.3d at 1498 (“The EIS is a procedural obligation designed to assure that agencies give proper consideration to the environmental consequences of their actions....”) (citation and internal quotation marks omitted). Because the NEPA requirements are designed to “provide a mechanism to enhance or improve the environment and prevent further irreparable damage” to the environment, no Environmental Im *662 pact Statement is needed “for federal actions that conserve the environment... Id. at 1505 (citation and footnote reference omitted). In this circumstance, as in Douglas County, “the NEPA procedure seem[s] superfluous.” Id. at 1503 (internal quotation marks omitted). As the panel recognized in Drakes Bay, if the federal decision “is essentially an environmental conservation effort,” NEPA obligations are not triggered. 2014 WL 114699 at *12. The panel explained that the Endangered Species Act “farthers the goals of NEPA without demanding an EIS....” Id. (quoting Douglas County, 48 F.3d at 1505,1506) (emphasis in Drakes Bay). We should be similarly “reluctant to make NEPA more of an obstructionist tactic to prevent environmental protection than it may already have become.” Id. at *13 (quoting Douglas County, 48 F.3d at 1508). At this point, imposing an overlay of NEPA requirements “would only hinder [the Bureau of Reclamation’s] efforts at attaining the goal of improving the environment.” Douglas County, 48 F.3d at 1506 (citation omitted). See Majority Opinion, p. 652 ([T]he preparation of an EIS will not alter Reclamation’s obligations under the ESA....). There is no need to require the Bureau of Reclamation to engage in scientific busywork. “This case simply does not present the type of situation NEPA was intended to address.” Burbank Anti-Noise Group, 623 F.2d at 117.
I respectfully dissent.